UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

YAHYA (JOHN) LINDH, *on his own behalf* )
*and on behalf of those similarly situated*, )
                                        Plaintiff, )
                                            vs. ) No. 2:14-cv-00142-JMS-WGH
WARDEN, FEDERAL CORRECTIONAL )
INSTITUTION, TERRE HAUTE, INDIANA, )
*in his official capacity*. )
                                        Defendant. )

## ORDER ON MOTION FOR CLASS CERTIFICATION

Presently pending before the Court is Plaintiff Yahya (John) Lindh's Motion to Certify Class. [Filing No. 8.] Mr. Lindh seeks injunctive relief from Defendant's policy that prisoners in the Communications Management Unit ("CMU") of the Terre Haute Federal Correctional Institution undergo a visual inspection of all body surfaces and body cavities before non-contact, social visits. [Filing No. 7 at 1; Filing No. 21 at 2.] Mr. Lindh seeks to certify a class of "all persons currently and in the future confined in the [Terre Haute CMU]." [Filing No. 7 at 2.] Defendant opposes class certification. [Filing No. 18.] For the reasons that follow, the Court grants Mr. Lindh's Motion to Certify Class. [Filing No. 8.]

### I.
### STANDARD OF REVIEW

It is the plaintiff's burden to prove that the class should be certified. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The Court "may certify a class of plaintiffs if the putative class satisfies all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b)." *Id.* The plaintiff also must show that the class is "indeed identifiable as a class." *Id.*

1

The primary question when ruling on class certification is "whether plaintiff is asserting a claim which, assuming its merit, will satisfy the requirements of Rule 23." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). But Rule 23 "does not set forth a mere pleading standard." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014), *reh'g denied*. "Rather, when factual disputes bear on issues vital to certification . . . the court must receive evidence and resolve the disputes before deciding whether to certify the case." *Id.*; *see also Szabo*, 249 F.3d at 676 (when deciding whether to certify a class, the Court must "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues).

Mr. Lindh seeks to certify a class in this action pursuant to Rule 23(b)(2). [Filing No. 9 at 1.] A class may be certified under that section "only if the party opposing the class acted or refused to act on grounds that apply generally to the class." *Rahman v. Chertoff*, 530 F.3d 622, 627 (7th Cir. 2008).

## II.
### BACKGROUND

Mr. Lindh is a prisoner in the CMU at the Federal Correctional Institution in Terre Haute. [Filing No. 7 at 1; Filing No. 17 at 1 (admitting allegation).] "Inmates are placed in the CMU to allow greater management of their communication with persons in the community through more effective monitoring of their telephone use, written correspondence, and visiting." [Filing No. 18-1 at 3 (affidavit from Deputy Captain Vincent Rigsby).]

The CMU contains 55 cells that could hold two prisoners each. [Filing No. 7 at 3; Filing No. 17 at 4 (admitting allegation).] "Within the CMU, separated by a locked door from the areas that prisoners are allowed regular access to, there are two rooms separated by a plexiglass window." [Filing No. 7 at 4; Filing No. 17 at 4 (admitting allegation).] At issue in this litigation are what the parties call "social visits," and it is undisputed that these visits "take place through

2

the plexiglass with the parties conversing by phone." [Filing No. 7 at 4; Filing No. 17 at 4 (admitting allegation).] Inmates in the CMU are visually searched prior to these non-contact, social visits. [Filing No. 18-1 at 3.] Inmates are typically not searched after a social visit unless there is reasonable suspicion that some type of contraband had an opportunity to change hands. [Filing No. 18-1 at 3.] That scenario is rare. [Filing No. 18-1 at 3.] As of November 6, 2014, 48 inmates were housed in the CMU and 19 of them had received at least one social visit while housed in the CMU. [Filing No. 24-2 at 1-2.]

In May 2014, Mr. Lindh filed a putative class action against Defendant. [Filing No. 1.] He contends that Defendant has a policy "of subjecting CMU prisoners to the visual searches, which are strip searches, if they have non-contact visits." [Filing No. 7 at 6.] Mr. Lindh claims that this "is unreasonable and violates the Fourth Amendment to the United States Constitution." [Filing No. 7 at 6.] Mr. Lindh proposes a class defined as "all persons currently and in the future confined in the Communications Management Unit at the Federal Correctional Institution—Terre Haute." [Filing No. 7 at 3.] He now requests that the Court certify his proposed class, [Filing No. 8], which Defendant opposes, [Filing No. 18].

### III.
### DISCUSSION

The Court will address each requirement for certification pursuant to Federal Rule of Civil Procedure 23 in turn.

**A. Existence of an Identifiable Class**

Mr. Lindh contends that his proposed class is easily identifiable by reference to the objective criteria of being a prisoner in the CMU. [Filing No. 9 at 3.] Defendant disagrees, arguing that "[t]o determine whether the Plaintiff or another CMU inmate is properly a member of the proposed class, the Court would have to determine whether the circumstances surrounding the

3

visual search made it unreasonable under the Fourth Amendment or that the search at issue violated the Bureau's policy allowing such searches." [[Filing No. 18 at 6](#).]

Before addressing the Rule 23 factors, the Court must examine whether the proposed class members are sufficiently definite. To do so, "[t]he plaintiff must . . . show . . . that the class is indeed identifiable as a class." *[Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)](#). When "there is no way to know or readily ascertain who is a member of the class," the class "lacks the definiteness required for class certification." *[Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481, 495 (7th Cir. 2012)](#). If the class as defined is sufficiently definite, the Court turns to the Rule 23(a) factors.

The Court agrees with Mr. Lindh that his proposed class is sufficiently definite because the inmates housed in the CMU are easily identifiable by objective criteria—*i.e.*, their placement in the CMU. Defendant's argument to the contrary that the circumstances of each search would have to be evaluated for reasonableness ignores that, as Mr. Lindh points out in reply, his action does not challenge searches for cause. [[Filing No. 21 at 4](#).] Instead, Mr. Lindh challenges the constitutionality of the generally applicable policy that requires visual strip searches of all CMU inmates before non-contact, social visits. [[Filing No. 21 at 4](#).] It is undisputed that the policy at issue applies to all CMU inmates. [[Filing No. 18-1 at 3](#) (Defendants evidence attesting that "[i]nmates in the CMU are visually searched prior to all visits, [including] social visits, which are non-contact").] Thus, the Court concludes that the proposed class is sufficiently identifiable.

**B. Numerosity**

Mr. Lindh contends that his proposed class is sufficiently numerous such that joinder would be impracticable. [[Filing No. 9 at 3-6](#).] He points out that the CMU typically holds between 40 and 50 prisoners and that the policy he challenges applies equally to all of them. [[Filing No. 9 at

4

4.] He emphasizes that he seeks injunctive relief on behalf of a fluid class of current and future CMU prisoners. [Filing No. 9 at 4-5.]

In response, the Defendant argues that Mr. Lindh has not proven that joinder is impracticable because "the size and scope cannot be determined." [Filing No. 18 at 8.] At the time the response was filed, there was "no evidence in the record establishing that [Mr. Lindh], or any other inmate in the CMU, has been subjected to an improper visual search." [Filing No. 18 at 8.] Defendant further contends that it is undisputed that visual searches administered under proper circumstances are not a violation of the Fourth Amendment. [Filing No. 18 at 8.]

In reply, Mr. Lindh emphasizes that the merits of a claim are not to be considered in the course of class certification. [Filing No. 21 at 5.] He asserts that there are approximately 48 prisoners in the CMU. [Filing No. 21 at 5-6.] After this motion was fully briefed, Mr. Lindh timely submitted Defendants' recent interrogatory responses, which confirm that there were 48 inmates housed at the CMU as of November 6, 2014, and that 19 of them had received at least one social visit while housed in the CMU. [Filing No. 24-2 at 1-2.]

The Court can only certify a class that "is so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002) (collecting cases); *Hubler Chevrolet, Inc. v. GMC Corp.*, 193 F.R.D. 574, 577 (S.D. Ind. 2000).

As an initial matter, the Court agrees with Mr. Lindh that the ultimate merits of his action are not at issue at the class certification stage. *See, e.g.*, *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("[h]ow many (if any) of the class members have a valid claim is the issue to be determined after the class is certified"). Instead, it is undisputed that there are currently 48

inmates housed in the CMU, [Filing No. 24-2 at 1], and that the strip search policy Mr. Lindh challenges applies to all of them, [Filing No. 18-1 at 3 (Defendant's evidence attesting that "[i]nmates in the CMU are visually searched prior to all visits, [including] social visits, which are non-contact").] While only 19 of them have had non-contact, social visits subjecting them to the visual search that Mr. Lindh contends is unconstitutional, it is possible that some inmates are not engaging in visits because they do not want to undergo that search.

It is undisputed that the CMU population is fluid, [Filing No. 24-2 at 1 (Defendant's interrogatories representing that 17 prisoners have been transferred into the CMU since January 1, 2013)], and that Mr. Lindh's proposed class includes future inmates who will be housed in the CMU, [Filing No. 7 at 3]. Moreover, Mr. Lindh's request for injunctive relief from the challenged policy will necessarily affect the interests of any current and future CMU prisoners, the joinder of which, regardless of the number, is inherently impracticable. *See Rosario v. Cook Cnty.*, 101 F.R.D. 659, 661 (N.D. Ill. 1983) (noting with regard to the numerosity requirement, the injunctive relief sought "will necessarily affect the interests of future [individuals affected by the policy at issue]. Regardless of their number, the joinder of future alleged [individuals] is inherently impracticable."). For these reasons, the Court concludes that the class Mr. Lindh proposes is sufficiently numerous that joinder is impracticable pursuant to Rule 23(a)(1).

### C. Commonality and Typicality

Mr. Lindh argues that the putative class is united by the common question of whether the Defendant's strip search policy before non-contact, social visits is constitutional. [Filing No. 9 at 6.] He contends that since all CMU inmates are subject to the challenged policy, they are united by the common questions of law and fact. [Filing No. 9 at 6-7.] He presents similar arguments for why his claims are typical of the class members he seeks to represent. [Filing No. 9 at 7-8.]

6

The Defendant merges his response arguments regarding commonality and typicality. [Filing No. 18 at 10-12.] He argues that the putative class does not satisfy these requirement because "[t]he circumstances that warrant application of the policy is dependent on the specific circumstances related to each inmate and each visit." [Filing No. 18 at 11.] He contends that the challenged policy "is not uniformly applied to inmates' post-non-contact visits in all circumstances." [Filing No. 18 at 11.]

In reply, Mr. Lindh emphasizes that the Defendant admits that all CMU inmates are subject to the search at issue before non-contact, social visits. [Filing No. 21 at 8.] Thus, he contends that the standardized conduct towards members of the proposed class supports commonality and typicality. [Filing No. 21 at 8.]

A class action requires "questions of law or fact common to the class," Fed. R. Civ. Pro. 23(a)(2), and the plaintiff's claims or defenses must be "typical of the claims or defenses of the class[,]" Fed. R. Civ. Pro. 23(a)(3). Commonality is satisfied when there is a "common nucleus of operative fact" that is, a "common question which is at the heart of the case." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). All questions of fact or law need not be identical; rather, the requirement is satisfied as long as the class claims arise out of the same legal or remedial theory. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 167 (S.D. Ind. 2009). The commonality and typicality requirements tend to merge because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Although typicality may exist even if there are factual distinctions between the claims of the named plaintiffs

and other class members, the requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (citation omitted).

The Court concludes that the proposed class presents a common nucleus of operative fact and has a common question at its core. Specifically, it is undisputed that all members of the CMU are subject to the challenged strip search policy surrounding non-contact, social visits and that Mr. Lindh seeks injunctive relief from this policy. Mr. Lindh does not challenge any pre- or post-visit searches for cause. [Filing No. 21 at 4.] Thus, the Defendant's attempt to insert factual or legal differences into the class fails, and Mr. Lindh's claim and the proposed injunctive relief are typical of the putative class members he seeks to represent. Accordingly, the Court concludes that the proposed class meets the commonality and typicality requirements of Rule 23(a).

### D. Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires the Court to find that "the representative parties will fairly and adequately protect the interests of the class." Mr. Lindh asserts that he and his counsel are adequate representatives for this class action. [Filing No. 9 at 8.] Defendant does not object in his response. [Filing No. 18.] Moreover, the Court's own experiences with Mr. Lindh's counsel confirm their legal abilities. The Court finds the adequacy requirements of Rule 23(a)(4) met in this case.

### E. Federal Rule of Civil Procedure 23(b)(2)

In addition to meeting the prerequisites of Rule 23(a), the proposed class must satisfy one of the conditions of Rule 23(b). *Messner*, 669 F.3d at 811; *Oshana*, 472 F.3d at 513. Mr. Lindh claims that Rule 23(b)(2) applies here, which authorizes a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. Pro. 23(b)(2).

In this case, Mr. Lindh claims that Defendant's policy of visually searching CMU inmates prior to non-contact, social visits violates the Fourth Amendment, and he seeks injunctive relief against any future violates. This is a "prime example" of a proper class under Rule 23(b)(2). [Amchem Prods. v. Windsor, 521 U.S. 591, 614 (1997)](#) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of proper classes under Rule 23(b)(2)); *see also* [Doe v. Guardian Life Ins. Co., 145 F.R.D. 466, 477 (N.D. Ill. 1992)](#) ("[T]he primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members."). Accordingly, the Court finds that Rule 23(b)(2) is satisfied here.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **GRANTS** Mr. Lindh's Motion to Certify Class. [[Filing No. 8](#).] The Court requests that the assigned Magistrate Judge set a case management conference with the parties. The Court also requests that the Clerk docket the applicable Practices and Procedures in this action.

Date: December 19, 2014

*[signature: Jane Magnus-Stinson]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF**:

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Kenneth J. Falk
ACLU OF INDIANA

kfalk@aclu-in.org

Jonathan A. Bont
UNITED STATES ATTORNEY'S OFFICE
jonathan.bont@usdoj.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov